UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
NORTH CHINA SHIPPING CO., LTD.,      :
                                     :
                  Plaintiff,         :   ECF
                                     :   AMENDED
          -against-                  :   VERIFIED COMPLAINT
                                     :   07 Civ. 439 (PKL)
GUANGXI WANXIN INTERNATIONAL         :
TRADING CO., LTD. and UNION          :
MINERALS LTD.,                       :
                                     :
                  Defendants.        :
------------------------------------x

      Plaintiff, NORTH CHINA SHIPPING CO., LTD., ("NCS"), by and through its attorneys, Cardillo & Corbett, as and for its Amended Verified Complaint against the Defendants, GUANGXI WANXIN INTERNATIONAL TRADING CO., LTD. ("GWI") and UNION MINERALS LTD. ("UNION") alleges, upon information and belief as follows:

### JURISDICTION

      1.   This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

### THE PARTIES

      2.   At all material times to this action NCS was, and still is, a foreign business entity duly organized and existing under the laws of the British Virgin Islands.

      3.   At all times material to this action GWI was, and still is, a foreign business entity organized and existing under the laws of a foreign country with an address

at 12/F, Tian Ma Bldg., Port District, Fangcheng City, Guangxi, China.

4. At all times material to this action UNION was, and still is, a foreign business entity organized and existing under the laws of a foreign country with an address at 2001-4, 20-F, Hang Seng Building, 77 Des Voeux Hoau, Central, Hong Kong.

### GWI'S BREACH OF CONTRACT - M/V THIA MATINA

5. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-4 of this Complaint as if set forth at length herein.

6. By a voyage charter party dated August 21, 2006, NCS, as disponent owner, chartered the M/V THIA MATINA to GWI, as Charterer, to carry a cargo of bulk iron ore from India to China (the "Charter Party").

7. Under the terms of the Charter Party, the agreed demurrage rate was $15,000 per day and the agreed despatch rate of $7,500 per day. The vessel incurred load port demurrage in the amount of $15,270.83.

8. GWI, however, earned despatch in the amount of $5,546.88 at the discharge port. As a result $9,723.95 in demurrage is outstanding and due NCS.

9. NCS has demanded payment of said demurrage, but GWI has failed and refused to pay.

10. The Charter Party provides that any disputes arising under the Charter Party shall be referred to arbitration in London under English law.

11. Plaintiff reserves the right to demand arbitration from GWI pursuant to the terms of the Charter Party.

12. Interest, costs and attorneys' fees are routinely awarded to the prevailing party by arbitrators in London pursuant to English law. As best as can now be estimated, the following amounts can be expected to be recovered in the action.

|   |   |   |
|---|---|---|
| A. | On the principal claims: | $9,723.95 |
| B. | Interest, arbitration fees and attorneys' fees: | $2,430.99 |
|   | TOTAL: | $12,154.94 |

GWI'S BREACH OF CONTRACT - M/V ASIAN EXCELSIOR

13. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-12 of this Complaint as if set forth at length herein.

14. By a voyage charter party dated August 22, 2006, NCS, as disponent owner, chartered the M/V ASIAN EXCELSIOR to GWI, as Charterer, to carry a cargo of bulk iron ore from India to China (the "Charter Party").

15. Under the terms of the Charter Party, the

agreed demurrage rate was $23,000 per day and the agreed despatch rate of $11,500 per day.

16. At the first load port of Haldia, India the vessel incurred demurrage in the amount of $16,371.53. At the second load port of Paradip, India Charterer's earned despatch in the amount of $3,569.79. At the discharge port the vessel incurred demurrage in the amount of $18,224.31. As a result $31,026.05 in demurrage is outstanding and due to NCS.

17. NCS has demanded payment of said demurrage, but GWI has failed and refused to pay.

18. The Charter Party provides that any disputes arising under the Charter Party shall be referred to arbitration in London under English law.

19. Plaintiff reserves the right to demand arbitration from GWI pursuant to the terms of the Charter Party.

20. Interest, costs and attorneys' fees are routinely awarded to the prevailing party by arbitrators in London pursuant to English law. As best as can now be estimated, the following amounts can be expected to be recovered in the action.

    A.  On the principal claims:    $ 31,026.05

    B.  Interest, arbitration fees and attorneys' fees:    $7,756.51

TOTAL: $38,782.56

GWI'S BREACH OF CONTRACT - M/V PROTEC

21. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-20 of this Complaint as if set forth at length herein.

22. By a voyage charter party dated September 6, 2006, NCS, as disponent owner, chartered the M/V PROTEC to GWI, as Charterer, to carry a cargo of bulk iron ore from India to China (the "Charter Party").

23. Under the Charter Party the agreed demurrage rate was $16,000 per day. The vessel incurred demurrage at the load port of Haldia, India in the amount of $218,722.22. The vessel also incurred demurrage at the second load port of Paradip, India in the amount of $46,666.67, as well as discharge port demurrage in the amount of $24,177.78. The vessel, therefore, incurred total demurrage of $289,566.67.

24. Under the terms of the Charter Party Charterer was required to load 40,000 metric tons of cargo, 10% more or less at Owner's option. NCS, as Owner, opted to carry and requested Charterer to provide a total cargo of 42,500 metric tons. GWI, however, failed to load the required amount and loaded only 38,058 metric tons. As a result NSC is entitled to deadfreight in the amount of $65,519.50, consisting of 4,442 metric tons at the charter rate of $14.75 per metric

ton.

25. NCS has demanded payment of said deadfreight and demurrage, but GWI has failed and refused to pay.

26. The Charter Party provides that any disputes arising under the Charter Party shall be referred to arbitration in London under English law.

27. Plaintiff reserves the right to demand arbitration from GWI pursuant to the terms of the Charter Party.

28. Interest, costs and attorneys' fees are routinely awarded to the prevailing party by arbitrators in London pursuant to English law. As best as can now be estimated, the following amounts can be expected to be recovered in the action.

| | | |
|---|---|---|
| A. | On the principal claims: | $355,086.17 |
| B. | Interest, arbitration fees and attorneys' fees: | $88,771.54 |
| | TOTAL: | $443,857.71 |

GWI'S BREACH OF CONTRACT - M/V MICHALAKIS

29. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-28 of this Complaint as if set forth at length herein.

30. By a voyage charter party dated September 28, 2006, NCS, as disponent owner, chartered the M/V MICHALAKIS to GWI, as Charterer, to carry a cargo of bulk iron ore from

India to China (the "Charter Party").

31.  Under the Charter Party the agreed demurrage rate was $20,000 per day and the agreed despatch rate was $10,000 per day.  The vessel incurred demurrage at the load port of Haldea, India in the amount of $193,319.44 and at the load port of Paradip, India in the amount of $36,402.78.

32.  GWI, however, earned despatch in the amount of $11,083.33 at the discharge port.  As a result $218,638.89 in demurrage is outstanding and due to NSC.

33.  Under the terms of the Charter Party Charterer was required to load 50,000 metric tons, 10% mor or less at Owner's option.  NCS, as Owners, opted to carry and requested Charterer to provide a total cargo of 53,207 metric tons. GWI, however, failed to load the requested amount and loaded only 45,944 metric tons.  As a result, NSC is entitled to deadfreight in the amount of $117,660.60, consisting of 7263 metric tons at charter rate of $16.20 per metric ton.

34.  In addition, the vessel carried a total of 45,944 metric tons and earned freight at the charter rate of $16.20 per metric ton in the total amount of $744,292.80 which is due and outstanding from GWI to NSC.

35.  NSC has demanded payment of said freight, deadfreight and demurrage, but GWI has failed and refused to pay.

36.  The Charter Party provides that any disputes

7

arising under the Charter Party shall be referred to arbitration in London under English law.

37.  Plaintiff reserves the right to demand arbitration from GWI pursuant to the terms of the Charter Party.

38.  Interest, costs and attorneys' fees are routinely awarded to the prevailing party by arbitrators in London pursuant to English law.  As best as can now be estimated, the following amounts can be expected to be recovered in the action.

| | | |
|---|---|---|
| A. | On the principal claims: | $1,080,592.29 |
| B. | Interest, arbitration fees and attorneys' fees: | $270,148.07 |
| | TOTAL: | $1,350,740.36 |

AS AND FOR PLAINTIFF'S CAUSE
OF ACTION AGAINST DEFENDANT UNION

39.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-38 of this Complaint as if set forth at length herein.

40.  At all material times there existed such unity of ownership and interest between GWI and UNION that no separation exists between them, and UNION is the alter ego of GWI in that: (a) GWI pays its debts through the instrumentality, front and conduit of UNION; and (b) the monies, funds, and property purporting to belong to UNION

were and still are intermingled and commingled with the assets of GWI.

41. UNION has been used by GWI to defraud the creditors of GWI and other third parties, through the device artifice and subterfuge of interposing UNION between GWI and its creditors and third parties.

42. By reason of the foregoing conduct of GWI and UNION, NCS has sustained damages as described above.

### GWI AND UNION NOT FOUND WITHIN THE DISTRICT

43. GWI and UNION cannot be found within this District within the meaning of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, GWI and UNION have, or will have during the pendency of this action, property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN Amro Bank NV, American Express Bank, Bank of America, Bank of Communications Co. Ltd. New York Branch, Bank of New York, Barclays Bank, BNP Paribas, Citibank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, UBS AG and/or Wachovia Bank, which are believed to be due and owing to GWI and UNION.

44. Plaintiff seeks an order from this court directing the Clerk of the Court to issue Process of Maritime

Attachment and Garnishment pursuant to Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any property of GWI and UNION held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over GWI and UNION and to secure Plaintiff's claims as described above.

  **WHEREFORE**, Plaintiff prays:

  A. That process in due form of law issue against GWI and UNION citing them to appear and answer under oath all and singular the matters alleged in the Complaint.

  B. That since GWI and UNION cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, ABN Amro Bank NV, American Express Bank, Bank of America, Bank of Communications Co. Ltd. New York Branch, Bank of New York, Barclays Bank, BNP Paribas, Citibank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, UBS

AG and/or Wachovia Bank, which are due and owing to GWI and UNION, in the amount of $1,845,535.57 to secure Plaintiff's claims and that all persons claiming any interest in the same be cited to appear and pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims answer the matters alleged in the Complaint.

  C. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeal thereof; and

  D. That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
    April 4, 2007

          CARDILLO & CORBETT
          Attorneys for Plaintiff
          NORTH CHINA SHIPPING CO., LTD.

        By: _____
          James P. Rau (JR 7209)

          Office and P.O. Address
          29 Broadway, Suite 1710
          New York, New York 10006
          Tel: (212) 344-0464
          Fax: (212) 797-1212

**ATTORNEY'S VERIFICATION**

State of New York )
                  ) ss.:
County of New York)

    1.    My name is James P. Rau.

    2.    I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

    3.    I am a partner in the firm of Cardillo & Corbett, attorneys for the Plaintiff.

    4.    I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

    5.    The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

    6.    The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

    7.    I am authorized to make this Verification on

12

behalf of the Plaintiff.

_____
James P. Rau

Sworn to this 4th day
of April, 2007

_____
NOTARY PUBLIC

TULIO R. PRIETO
Notary Public, State of New York
No. 02PR6070011
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires February 19, 2010

13